UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JEREMY MOBERLY, on behalf of himself, all others similarly situated, and on behalf of the general public,

Plaintiffs,

v.

FEDEX CORPORATION; FEDEX FREIGHT, INC.; FEDEX GROUND PACKAGE SYSTEM, INC.; FEDERAL EXPRESS CORPORATION; and DOES 2-100,

Defendants.

No. 2:18-cv-00393-KJM-AC

ORDER

After defendant removed this action to federal court, plaintiff moved to remand and for an award of attorneys' fees. The sole issue is whether the federal amount in controversy requirement is satisfied. As explained below, the court GRANTS the motion to remand but DENIES the motion for attorneys' fees incurred in connection with the motion.

I. BACKGROUND

In this representative action seeking penalties under California's Private Attorney General Act of 2004 ("PAGA"), California Labor Code § 2698, *et seq.*, plaintiff Jeremy Moberly, on behalf of himself and similarly aggrieved employees, sues defendants FedEx Corporation,

1

FedEx Freight, Inc., and FedEx Ground Package System, Inc. (collectively, "FedEx") for multiple alleged violations of the California Labor Code. *See* Compl., ECF No. 1, Ex. A; *see also* First Am. Compl., ("FAC"), ECF No. 1, Ex. B.[1] Specifically, Moberly alleges FedEx failed to pay regular rate wages for all work performed, pay overtime wages, provide meal, rest or recovery periods, pay wages due at termination and during employment, provide sick days, provide itemized employee wage statements, pay employees two times per month, and reimburse expenses associated with discharging duties.

After Moberly filed this action in state court, FedEx removed to federal court, alleging this court has diversity jurisdiction. Removal Not., ECF No. 1, ¶ 9; ECF Nos. 3, 4 (FedEx Freight, Inc. and FedEx Corporation joinders in FedEx Ground's notice of removal). Moberly is a California citizen. Removal ¶ 10; Compl. ¶ 5; FAC ¶ 5. Each defendant is a corporate entity and no defendant is a California citizen. Removal ¶¶ 13-19; *see* Mot., ECF No. 7 at 11[2] n.1 (Moberly conceding parties' citizenship as alleged in removal notice). Moberly moves to remand, contending the amount-in-controversy requirement remains unmet and the court therefore lacks diversity jurisdiction; he also seeks attorney's fees upon remand. Mot. FedEx has opposed, Opp'n, ECF No. 9; *see* ECF Nos. 10-11 (joinder of FedEx defendants), and Moberly filed a reply, ECF No. 13. FedEx then supplemented the opposition to notify the court of the Ninth Circuit's decision in *Fritsch v. Swift Transportation Co. of Arizona, LLC*, 899 F.3d 785 (9th Cir. 2018). ECF No. 14. The court submitted the motion without oral argument and resolves it here.

II.   LEGAL STANDARD

Under 28 U.S.C. § 1332(a)(1), a district court has jurisdiction over a civil action where the amount in controversy exceeds $75,000 and there is complete diversity of citizenship

---

[1] FedEx alleged the first amended complaint was filed, but had not yet been served, at the time of removal. *See* Removal ¶ 3. FedEx subsequently noted the first amended complaint was served on FedEx Ground, but not the other defendants. Opp'n at 9 n.2.

[2] With the exception of citations to paragraph numbers, the court's citations to the briefs refer to ECF page numbers, not the briefs' internal pagination.

between the parties. Under 28 U.S.C. § 1441(a), a defendant may remove an action to a federal district court that would have had "original jurisdiction" over the action had it been filed there.

Where a complaint does not specify the amount of damages and the plaintiff challenges jurisdiction after removal, the removing defendant bears the burden of establishing by a preponderance of the evidence that the amount in controversy satisfies the jurisdictional requirement. *See Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 403-04 (9th Cir. 1996). A district court may require, and may consider, "summary-judgment-type evidence relevant to the amount in controversy at the time of removal." *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997) (quoting *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335–36 (5th Cir. 1995)). There is a "strong presumption" against removal and the court therefore "strictly construe[s] the removal statute against removal jurisdiction." *See Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).

III. <u>DISCUSSION</u>

The parties agree they are diverse. Accordingly, to defeat remand, FedEx must show by a preponderance of the evidence that the amount in controversy exceeds $75,000.

FedEx estimates the amount in controversy is $256,437.50. Removal ¶ 41. In opposing remand, it revises that figure to $419,091.25. Opp'n at 23. In his motion to remand, Moberly argues FedEx miscalculates the amount in controversy in the following ways: (1) FedEx improperly includes the State of California's 75% share of PAGA penalties when the court may consider only the 25% portion Moberly may recover, Opp'n at 13-15; (2) FedEx included penalties for claims Moberly has not pleaded, *id.* at 16-17; (3) FedEx miscalculated the number of workweeks for which Moberly may recover penalties, *id.* at 17-20; (4) FedEx incorrectly calculated the attorneys' fees available, *id.* at 20-24. Addressing only Moberly's first and third arguments, the court finds FedEx has not met its burden and this case must be remanded.

      A.    <u>The Amount in Controversy is Limited to Moberly's Potential 25% PAGA Recovery</u>

Under the PAGA, civil penalties are distributed according to the following formula: 75% to the Labor and Workforce Development Agency (LWDA) and 25% to aggrieved employees.

Cal. Lab. Code § 2699(i). The parties dispute whether the court may consider 100% of potential PAGA penalties in determining the amount in controversy, or whether it should look to Moberly's potential 25% share alone. Mot. at 13-15; Opp'n at 21-23.

It is well established that the amount in controversy requirement cannot be satisfied by aggregating PAGA penalties a plaintiff seeks with the PAGA penalties an action seeks on behalf of non-party aggrieved employees. *Urbino v. Orkin Servs. of California, Inc.*, 726 F.3d 1118, 1122-23 (9th Cir. 2013). In reaching this conclusion, the Ninth Circuit applied "[t]he traditional rule [] that multiple plaintiffs who assert separate and distinct claims are precluded from aggregating them to satisfy the amount in controversy requirement," unless "they 'unite to enforce a single title or right in which they have a common and undivided interest,' . . . . [meaning] 'the claims are derived from rights that they hold in group status . . . .'" *Id.* (quoting *Snyder v. Harris*, 394 U.S. 332, 335 (1969), *Eagle v. Am. Tel. & Tel. Co.*, 769 F.2d 541, 546 (9th Cir. 1985)). Because common questions of fact and law will not necessarily establish a common and undivided interest, the court must ask whether "the defendant 'owes an obligation to the group of plaintiffs as a group and not to the individuals severally,'" to determine whether a common and undivided interest exists. *Id.* (quoting *Gibson v. Chrysler Corp.*, 261 F.3d 927, 944 (9th Cir. 2001)). While "[a]ggrieved employees have a host of claims available to them . . . . all of these rights are held individually" and cannot be aggregated. *Id.* (citations omitted).

The *Urbino* panel went on to observe that even where a PAGA "[p]laintiff can—and does—assert anything but his individual interest . . . we are unpersuaded that such a suit, the primary benefit of which will inure to the state, satisfies the requirement of federal diversity jurisdiction. The state, as the real party in interest, is not a 'citizen' for diversity purposes." *Id.* at 1122-23 (citation omitted). Following *Urbino*, district courts have divided as to whether the LWDA's 75% share of potential PAGA penalties is included in the amount in controversy, or whether plaintiff's 25% alone must satisfy that requirement. *Compare Patel v. Nike Retail Servs., Inc.*, 58 F. Supp. 3d 1032, 1046-48 (N.D. Cal. 2014) ("[T]his court does not read *Urbino* to hold that individual employees' PAGA claims must be reduced by 75% for purposes of calculating the amount in controversy."), *and Mitchell v. Grubhub Inc.*, No. CV1505465BROASX, 2015 WL

4

5096420, at *5-6 (C.D. Cal. Aug. 28, 2015) (same), *with Lopez v. Ace Cash Exp., Inc.*, No. LA CV11-07116 JAK, 2015 WL 1383535, at *4–5 (C.D. Cal. Mar. 24, 2015) (disagreeing with *Patel* and finding "the more persuasive reading of *Urbino* is that neither the share of other workers nor the share of the state is to be considered"), *and Steenhuyse v. UBS Fin. Servs.*, Inc., 317 F. Supp. 3d 1062, 1069 (N.D. Cal. 2018) (same).

After reviewing the divided case law, and in the absence of further guidance from the Circuit, the court joins those sister courts who have determined the LWDA's 75% share of any PAGA recovery cannot be aggregated with the plaintiff's 25% share to determine the amount in controversy. Accordingly, FedEx must establish that Moberly's 25% share alone satisfies the amount in controversy requirement.

B.  Number of Pay Periods at Issue

Upon removal, FedEx calculated the amount in controversy by "assuming [Moberly] was paid on a weekly basis," and further assuming Moberly worked "70 workweeks, from October 10, 2016 through [the removal date] February 20, 2018." Removal ¶ 30. In opposing this remand motion, FedEx offers a more "conservative[] estimate" of 61 weeks, closing Moberly's eligibility period on the date he filed his original complaint, December 19, 2017. Opp'n at 10. Moberly agrees his potential PAGA penalty recovery period began on October 10, 2016, but argues that period ended 16 weeks later when his employment with FedEx concluded at the end of January 2017. Mot. at 17.[3] The court agrees with Moberly.

Prior to removal, Moberly sent the LWDA and FedEx a notice dated October 10, 2017, which stated, "Mr. Moberly's employment with FedEx concluded around January 2017." *See* Roberts Decl., ECF No. 7-1, ¶ 2; Roberts Decl. Ex. 1 (Oct. 10, 2017 letter excerpt stating, "Mr. Moberly's employment with FedEx concluded around January 2017"); *see also* Fessenden Decl. Ex. A (providing Oct. 10, 2017 letter in full). In both his complaint and first amended complaint, Moberly alleges he is "a former employee of Defendants and/or DOES . . . ." Compl. ¶ 10 & FAC

---

[3] Although Moberly also argues FedEx improperly "fail[s] to account for vacation time or other time off that Mr. Moberly may have taken," the court need not address this argument. *See* Mot. at 19.

5

¶ 10; *see also* Compl. ¶ 11 & FAC ¶ 11 ("Plaintiff *was* employed . . . .") (emphasis added). FedEx ignores these allegations in Moberly's complaint and instead focuses exclusively on Moberly's allegation that he was "[a]t all times relevant to this action . . . employed by Defendants . . . ." Opp'n at 9 (quoting Compl. ¶ 5 & FAC ¶ 5). Further, without actually disputing that Moberly's employment ended in January 2017 despite presumably having access to his employment records, FedEx characterizes Moberly's October 10, 2017 letter as hearsay, suggests Moberly "waiv[ed] the attorney-client privilege" because the letter was drafted by his counsel, and faults Moberly for not "submitt[ing] a declaration setting forth his alleged last date of employment, which would have actually been admissible." *See* Opp'n at 11-12. In support of his reply, Moberly takes up this invitation and submits a declaration, to which FedEx has not objected. *See* Moberly Decl., ECF No. 13-1, ¶ 3 (confirming Moberly's "employment at FedEx ended in January 2017 around the end of the month").

The evidence before the court shows Moberly's employment concluded near the end of January 2017, confining his PAGA penalty eligibility to a 16-week period. *See Taylor v. Interstate Grp., LLC*, No. 15-CV-05462-YGR, 2016 WL 861020, at *3 (N.D. Cal. Mar. 7, 2016) ("Plaintiff's position that he cannot recover PAGA penalties for the pay periods following November 2014, when he was not in Defendant's employ, comports with both logic and the law.") (citations omitted). Even so, FedEx would have the court find that because its 70-week calculation is drawn from "the face of the Complaint and the FAC," it must stand. Opp'n at 9-10. FedEx's only support for this argument is the lone paragraph in Moberly's complaint and first amended complaint stating, "At all times relevant to this action, Plaintiff was employed by Defendants . . . ." *Id.* at 9 (quoting Compl. ¶ 5 & FAC ¶ 5). FedEx provides no authority requiring the court to credit this general allegation to the exclusion of Moberly's clearer allegation he is "a former employee." *See* Compl. ¶ 10 & FAC ¶ 10. While Moberly's allegation he is "a former employee," standing alone, leaves unclear when his employment ended, his letter to FedEx and declaration provide the necessary clarity to support the court's determination that the PAGA penalty eligibility period is 16 weeks.

While FedEx "notes the question on a motion to remand is not how many pay periods plaintiff can actually recover PAGA penalties for; the question is how many pay periods Plaintiff alleges PAGA violations for," the complaint is ambiguous on that point and all evidence before the court supports Moberly's 16-weeks calculation over FedEx's 70 or 61-weeks. *See* Opp'n at 10 (citing *Patel*, 58 F. Supp. 3d at 1040). Accordingly, for purposes of calculating the amount in controversy, the court uses 16-weeks as the applicable pay period.

C. Amount in Controversy, Without Attorneys' Fees

In evaluating the amount in controversy, the court reviews FedEx's removal allegations as significantly supplemented in its opposition, and adjusts those figures to reflect the findings above. Taking FedEx's allegations as they are, the court finds the amount in controversy requirement is not satisfied; therefore, the court need not, and does not, reach Moberly's many attacks on those allegations except where specifically noted. *See, e.g.*, Reply at 5-6 (noting FedEx calculates multiple penalties for same Labor Code violations and calculates penalties for claims Moberly has not pleaded). The formulas on which the court relies to determine the relevant amounts are set forth below by category:

- **$15,175 in PAGA penalties**: ((First Claim: $3,100[4] x 3 = $9,300) + (Second Claim: $3,100 x 3 = $9,300) + (Third Claim: $3,100 x 3 = $9,300) + (Fourth Claim: $3,100 x 2 = $6,200) + (Fifth Claim: $100 + (7 pay periods x $200)[5] = $1,500) + (Sixth Claim: $100 x 3 = $300) + (Seventh Claim: $3,100) + (Eighth Claim: $3,100 x 3 = $9,300) + (Ninth Claim: $3,100 x 3 = $9,300) + (Tenth Claim: $3,100)) x .25. *See* Removal ¶¶ 25, 28 & 30 (explaining Moberly seeks $100 per first pay period violation and $200 per period for second violation and calculating potential penalties) (citing Cal. Lab. Code § 2699(f)); Opp'n at 14-15 (modifying calculations to

---

[4] While FedEx uses $12,100 as its baseline penalty, *see* Opp'n at 14, the court uses $3,100 ((1 pay period x $100) + (15 pay periods x $200)), which accounts for the 16 pay periods Moberly worked rather than the 61 pay periods FedEx used.

[5] Assuming FedEx correctly identified the relevant "summer and autumn months . . . as May through November," Moberly's claims as to FedEx's alleged failure to provide cool down periods applied across 8 pay periods in 2016 and no pay periods in 2017. *See* Opp'n at 15 n.8.

reflect argument Moberly seeks PAGA penalties not only for each of his ten causes of action, but "for each Labor Code section violated in each cause of action" as well) (emphasis omitted).

- **$3,325 in additional civil penalties**: Labor Code § 210 ((1 pay period x $100) + (15 pay periods x $200) = $3,100) + Labor Code § 225.5 ((1 pay period x $100) + (15 pay periods x $200) x 2 = $ 6,200) + Labor Code § 226.3 ((16 wage statements x $250) = $4,000) x .25. *See* Removal ¶¶ 26, 31-36; Opp'n at 15-16.[6]

- **$88.75 in additional Labor Code § 225.5 penalties**, providing 25% of amount unlawfully withheld for meal periods in 2016 and 2017: (25 days x $10/hour x .25 = $62.50) + (10 days[7] x $10.50/hour x .25 = $26.25). *See* Opp'n at 16-17.

- **$387.50 in Labor Code § 558 penalties**: ((1 pay period x $50 x 1 cause of action) + (15 pay periods x $100 x 1 cause of action) = $1,550) x .25.[8] *See* Removal ¶¶ 37; Opp'n at 18.

- **$286.25 in additional Labor Code § 558 penalties**: $355 for underpaid wages: ((25 days x $10/hour) + (10 days x $10.50/hour)) + $355 for failure to provide meal breaks: ((25 days x $10/hour) + (10 days x $10.50/hour)) + $355 for failure to provide rest breaks: ((25 days x $10/hour) + (10 days x $10.50/hour)) + $80 for failure to provide cool down breaks and rest periods: (8 breaks in 2016 x $10/hour) x .25. *See* Opp'n at 19-20.

---

[6] Although FedEx does not include calculations under § 210 or § 226.3 in its opposition, it appears to argue those claims are still in controversy, so the court includes them, as calculated in the removal papers, here. *See* Opp'n at 21 (conceding Moberly's letter to the LWDA did not include allegations concerning §§ 210, 225 or 226.3, but arguing "that is to be expected because those sections set forth the PAGA penalties for the violations of other sections of the Labor Code, which Plaintiff has cited to") (emphasis omitted).

[7] FedEx did not calculate the number of workdays the court should use upon finding Moberly's employment ended at the end of January 2017. The court assumes there are 20 such days and uses 10 based on FedEx's assumption "it is reasonable to estimate that Plaintiff missed half of all meal breaks." *See* Opp'n at 17.

[8] As Moberly notes, a PAGA plaintiff cannot enforce a wage order promulgated by the Industrial Welfare Commission, and Moberly has not alleged violation of § 1198, which would allow him to indirectly enforce wage orders through this PAGA action. *See* Reply at 5-6 (quoting *Thurman v. Bayshore Transit Management, Inc.*, 203 Cal. App. 4th 1112, 1132 (2012)).

- **$1,925 in § 1197.1 penalties** (2 violations x 1 pay period x $100 = $200) + (2 violations x 15 pay periods x $250 = $7,500) x .25. Opp'n at 20.

- **$1,550 in § 1197 & § 247.5 violations**: (2 violations x 1 pay period x $100 = $200) + (2 violations x 15 pay periods x $200 = $6,000) x .25). Opp'n at 20.

The total when all of the above sums are added is **$22,737.50.**

The court also notes Moberly submits a declaration in which he "make[s] a legally binding commitment, on [his] own behalf, not to recover in [his] PAGA action an amount more than $74,999 individually, [which] includes—but is not limited to—all PAGA damages, penalties, amounts recovered, costs, and/or attorney fees." Moberly Decl. ¶ 4. He also warrants that his "attorneys will not seek any amount of attorney's fees attributable to [his] claims that would bring the amount in controversy in amount greater than $74,999." *Id.* ¶ 7. While this is not dispositive of the amount in controversy issue, it bolsters the court's finding that the amount in controversy is not satisfied here. *See* C. Wright, et al., 14AA Fed. Prac. & Proc. Juris. § 3702.1 (4th ed.) (noting a "federal court [] can insist on a binding affidavit or stipulation that the plaintiff will continue to claim less than the jurisdictional amount as a pre-condition for remanding the case to state court" though "[s]ome courts have required that these affidavits or stipulations be executed prior to the notice of removal as a sign of their bona fides" and "[o]ther courts . . . have carved out a narrow exception allowing binding, unequivocal post-removal affidavits or stipulations to clarify the amount-in-controversy when the complaint was ambiguous").

D. Amount in Controversy with Attorneys' Fees

The Ninth Circuit has recently held that "if a plaintiff would be entitled under a contract or statute to future attorneys' fees, such fees are at stake in the litigation and should be included in the amount of controversy." *Fritsch*, 899 F.3d at 788 (reversing district court's holding "only attorneys' fees that had been incurred as of the date of removal could be included"); *see id.* at 790 n.2 (noting district courts were split on issue prior to the panel's clarification in *Fritsch*). "But, in PAGA cases, that amount must be reduced to reflect only Plaintiff's *pro rata* share of those fees." *Arrellano v. Optum Med. Grp.*, No. CV 18-6093-DMG (ASX), 2019 WL 247220, at *4 (C.D. Cal. Jan. 17, 2019) (citing *Patel*, 58 F. Supp. 3d at 1049 ("[O]nly the portion of attorney's

fees attributable to [the plaintiff's] claims count towards the amount in controversy.")). The removing defendant has the burden of proving future attorneys' fees by a preponderance of the evidence. *Fritsch*, 899 F.3d at 788.

In its notice of removal and in opposing remand, FedEx proposed calculating attorneys' fees by taking either 25% of the projected PAGA damages or using the lodestar method. Removal ¶¶ 40-42 (estimating $51,287.50 in attorneys' fees under the 25% of damages approach and alleging lodestar would produce an amount "almost certainly exceed[ing] $75,000" without providing an actual estimate); Opp'n at 23 ("Here, Plaintiff has at least $335,273 at issue, meaning it is reasonable to assume there is approximately $83,818.25 in attorneys' fees that are at issue."). Notably, the *Fritsch* panel declined to adopt a per se 25% rule, which might improperly "relieve the defendant of its evidentiary burden by adopting a per se rule for one element of the amount at stake in the underlying litigation," though it noted a percentage of the total approach may be considered as a factor in the court's analysis. 899 F.3d at 796 & n.6. While FedEx's analysis of the amount in controversy above does not rely on actual employment records in its possession and strays from Moberly's allegations, its 25% estimate as to attorneys' fees is wholly unsupported. *See, e.g.*, *Arrellano*, 2019 WL 247220, at *5 ("Even if the Court were inclined to include 25% of the total recovery, however, there would be no evidence-based way to calculate that amount based on Defendants' submissions."). The court is not obliged to assist FedEx in meeting its burden and is in fact unable to do so on the record before it. With no basis for concluding the attorneys' fees at stake here will bring the amount in controversy to a figure exceeding $75,000, this action must be remanded.

E. <u>Attorneys' Fees</u>

The court DENIES Moberly's motion to award attorneys' fees upon remand. While the court finds FedEx's estimates upon removal were incorrect, it notes Moberly does not deny he refused to provide FedEx with information confirming his employment dates. *See* Opp'n at 27. Given the complaint's ambiguity, FedEx did not lack an objectively reasonable basis for removal.

/////

/////

## IV. CONCLUSION

This case is REMANDED to the Superior Court of Sacramento County.

IT IS SO ORDERED.

DATED: February 25, 2019.

_____
UNITED STATES DISTRICT JUDGE